IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMOND JAMES & ASSOCIATES,
INC.,
        *Plaintiff*,

    v.                                             Civil Action No. ELH-21-3096

SEAN RIERSON MARTIN,
        *Defendant*.

**MEMORANDUM**

This Memorandum concerns a motion for default judgment with respect to an action seeking to confirm an arbitration award.

The litigation in this Court began on December 3, 2021, when plaintiff Raymond James & Associates, Inc. ("Raymond James" or "RJA") filed a "Motion To Confirm Arbitration Award," naming Sean Rierson Martin, a former employee of RJA, as defendant.  ECF 1.[1]  The motion is supported by a memorandum of law (ECF 1-7) (collectively, the "Motion to Confirm") as well as five exhibits.  *See* ECF 1-2 through ECF 1-7.  The underlying arbitration award (*see* ECF 1-5, the "Award") was issued on August 20, 2021, and pertains to Martin's breach of a promissory note executed on February 3, 2016.  ECF 1, ¶¶ 3-7.

In particular, the Motion to Confirm asks the Court to confirm an award for compensatory damages in the amount of $328,618.81, plus prejudgment interest of $36,103.05 for the period from July 7, 2020 to August 12, 2021, and an additional $1,300 in costs incurred by RJA in

---

[1] Jurisdiction is predicated on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  ECF 1, ¶¶ 12-15.

connection with filing its claim with the Financial Industry Regulatory Authority ("FINRA") Dispute Resolution Services.  ECF 1, ¶ 9.[2]

Summons was returned executed on January 3, 2022, reflecting that service was effected on Martin on December 14, 2021.  ECF 6.  Therefore, pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), a response to the Motion to Confirm was due by January 4, 2022.  As of this date, however, Martin has not responded to the Motion to Confirm.  *See* Docket.

Accordingly, on January 25, 2022, RJA filed a "Motion For Entry Of Default."  ECF 10 ("Motion for Default").  The Motion for Default is supported by a "Declaration of Maxim V. Doroshenko," counsel for plaintiff.  ECF 10-1.

The Clerk entered an order of default as to Martin on January 25, 2022.  ECF 11.  The Clerk also issued a "Notice Of Default" to Martin on the same date, advising him that he had 30 days from the date of the Notice of Default to move to vacate the entry of default.  ECF 12.  To date, no such motion has been filed.

On February 28, 2022, RJA moved for default judgment.  ECF 13 (the "Default Judgment Motion").  The Default Judgment Motion is supported by a Declaration of Mr. Doroshenko. ECF 13-1. Consistent with the Motion to Confirm, the Default Judgment Motion requests entry of judgment against Martin in the amount of $328,618.81, plus interest of $36,103.05, as well as $1,300 for the costs incurred in connection with the arbitration proceeding, for a total of $366,021.86.  *See* ECF 13 at 4.

---

[2] Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice that FINRA is a "government-authorized not-for-profit organization that oversees" the U.S. broker-dealer industry.  *About FINRA*, FINRA, https://www.finra.org/about (last visited Apr. 5, 2022).  "A Broker Dealer is in the business of buying or selling securities on behalf of its customers or its own account or both." *Firms We Regulate*, FINRA, https://www.finra.org/about/firms-we-regulate (last visited Apr. 5, 2022).

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Default Judgment Motion, thereby confirming the Award.

## I.     Background[3]

RJA is a Florida corporation with its principal place of business located in St. Petersburg, Florida.  ECF 1, ¶ 13.  It is a "securities broker/dealer and a member of the [FINRA]."  *Id.* ¶ 1.  Martin, a resident of Maryland, was employed by RJA as a "Client Advisor/Financial Advisor," beginning on some unspecified date "until his employment was terminated on July 7, 2020."  *Id.* ¶ 2.

"As a condition of his employment with RJA,"  Martin executed an arbitration agreement on February 20, 2016.  *Id.* ¶ 4; *see* ECF 1-2 (the "Agreement"). Pursuant to the Agreement, Martin agreed, *inter alia*, "to arbitrate any 'controversy or claim arising out of or relating to the application for employment, employment relationship or termination thereof' under the rules of the [FINRA] as 'governed by the Federal Arbitration Act, 9 U.S.C. § 1 et. seq.'"  ECF 1, ¶ 4 (quoting ECF 1-2, ¶¶ 2, 8(c)).  Further, RJA asserts: "By virtue of his registration as a registered representative of RJA, a FINRA member, Defendant also agreed, among other things, to arbitrate any dispute or claim arising between him and RJA that is required to be arbitrated under the rules, constitutions or by-laws of FINRA."  ECF 1, ¶ 6.  Martin also agreed that "any arbitration award rendered against him could be entered as a judgment in any court of competent jurisdiction."  *Id.* ¶ 4; *see* ECF 1-2, ¶ 5.

---

[3] Under the circumstances, I must assume the truth of the facts alleged in the suit, other than those pertaining to damages, as discussed, *infra*.  *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010).

FINRA's Code of Arbitration Procedure for Industry Disputes (the "Code") regulates FINRA arbitration proceedings such as this one.  *See Code of Arbitration Procedure for Industry Disputes*, FINRA, https://www.finra.org/rules-guidance/rulebooks/finra-rules/13000#the-rule (last visited Apr. 5, 2022).  FINRA Rule 13200 is titled "Required Arbitration."  It specifies: "Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among" members; members and associated persons; or associated persons.  *See* ECF 1-4 at 2 (Copy of FINRA Rule 13200).

On or about February 3, 2016, Martin and RJA entered into a "Loan Terms Agreement," pursuant to which RJA agreed to loan funds to Martin in the amount of $509,367.00, with an interest rate of 1.67%, compounded quarterly.  *See* ECF 1-3 (the "Note").[4]  The Note refers to Martin as "CA/FA".  *Id.* at 2.

Specifically, Paragraph 1 is titled "**Loan Advance**".  *Id.*  It provides that "CA/FA shall sign and deliver to Raymond James a Loan Schedule & Acknowledgment ('LSA') in the form attached to [the Note] which specifies the Loan Amount agreed upon by Raymond James and CA/FA."  *Id.*; *see id.* at 6 (the "LSA").  "Upon CA/FA's execution of the LSA, Raymond James shall lend the Loan Amount to CA/FA . . . ."  *Id.* at 2, ¶ 1.  Further, the Note indicates that "the Loan payoff period shall be 28 quarters."  *Id.*  Martin executed the LSA on March 3, 2016.  *See id.* at 6.

The Note also includes a clause titled "**Repayment**."  *Id.* at 2, ¶ 3.  It states: "As long as CA/FA remains continuously employed by Raymond James, the loan principal plus interest shall

---

[4] The Note states that it was made on December 14, 2015.  ECF 1-3 at 2.  However, Martin signed it on February 3, 2016.  *Id.* at 5.

be paid by CA/FA on a quarterly basis as set out in the Loan Amortization Schedule attached to the LSA." ECF 1-3 at 2, ¶ 3; *see id.* at 8 (the "Loan Amortization Schedule").  According to this clause, "[t]he quarterly payments, which will be deducted  from the CA/FA's payroll check issued on the 15th day of each quarter, shall be as specified in the LSA Loan Amortization Schedule," and "[t]he total dollar amount of principal and interest paid for the loan period will be in the amount specified in the LSA." *Id.* at 2, ¶ 3.

Paragraph 4 of the Note, tilted **Mandatory Repayment**, provides: "If CA/FA's employment with Raymond James is terminated for any reason whatsoever, . . . the entire amount of the remaining principal of the loan shall immediately become due to Raymond James." *Id.* at 2, ¶ 4.  Further, the Note states: "Failure of CA/FA to repay the loan shall immediately entitle Raymond James to charge interest of 10% per annum from the date of termination." *Id.* at 2-3, ¶ 4.  And, the Note provides that, in the event of Martin's termination, RJA "shall be entitled to any costs of collection, including reasonable internal and external attorneys' fees." *Id.* at 3, ¶ 4.

And, of relevance here, Paragraph 11 is titled "**Arbitration And Choice of Law**".  It states, in part:  "The parties agree that any disputes concerning [the Note] shall be resolved by binding arbitration in accordance with the then existing Rules of FINRA and its Code of Arbitration Procedure." *Id.* at 3-4, ¶ 11.  Moreover, it provides, *id.*at 4:  "Judgement upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof." *Id.* at 4, ¶ 11.

As mentioned, Martin's employment with RJA concluded on July 7, 2020.  ECF 1, ¶ 2.  Thus, on that date, the Note became due, and interest began to accrue at the rate of ten percent per annum.  *See* ECF 1-3, ¶ 4.  Thereafter, RJA and Martin "had a dispute regarding repayment of [the Note]." ECF 1, ¶ 3.

In accordance with FINRA Rule 13200, "[o]n or around February 11, 2021, RJA filed a Statement of Claim against Defendant with FINRA relating to repayment of the promissory note." ECF 1, ¶ 7.[5]  As set forth in the Award, plaintiff sought "compensatory damages in the amount of $328,618.81, plus 10% default interest from July 7, 2020, until paid in full; reasonable attorneys' fees and all costs incurred in connection with [the arbitration] proceeding pursuant to the Note; and such additional and further relief as may be deemed just and appropriate"  ECF 1-5 at 2.[6]

Martin received notice of the claim.  *Id.* at 3.  However, he "did not file an Answer in response to RJA's Statement of Claim but did appear and participate in the Initial Prehearing Conference held on June 22, 2021." ECF 1, ¶ 8; *see* ECF 1-5 at 3.  The Award also indicates that Martin "appeared pro se."  ECF 1-5 at 2.

It appears that the arbitrator resolved the dispute without holding a hearing.  *See id.* at 3, 4 (assessing a "Pater Decision Fee").  Accordingly, "[o]n August 20, 2021, a FINRA Arbitrator issued a Final Award" in favor of RJA, finding Martin liable in the sum of $328,618.81, "plus interest at the rate of 10% per annum from July 7, 2020 to August 12, 2021, and $1,300 in costs incurred by RJA in connection with filing its claim with FINRA Dispute Resolution Services." ECF 1, ¶ 9; *see* ECF 1-5 at 3-4.[7]  The Award was made in Baltimore, Maryland.  ECF 1, ¶ 16; *see* ECF 1-5 at 2.

---

[5] Plaintiff did not provide the Court with a copy of the Statement of Claim.

[6] RJA has not identified the basis from which it determined the amount of compensatory damages requested in the Statement of Claim.  Presumably, however, this amount corresponds to the outstanding balance owed by Martin on the Note.

[7] The Award does not clarify the significance of August 12, 2021, or otherwise explain why interest ceased to accrue as of that date.  *See* ECF 1-5 at 3.  And, RJA's various submissions to the Court do not shed light on the matter.

On August 20, 2021, "FINRA mailed a copy of the Award to RJA and Defendant . . . along with a cover letter detailing Defendant's rights and obligations with respect to that Award, including Defendant's right to challenge the award."  ECF 1, ¶ 10; *see* ECF 1-6 (the "FINRA Letter").  Specifically, the FINRA Letter stated: "[A]ll monetary awards shall be paid within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction." ECF 1-6 at 2.  Additionally,  the FINRA Letter provided: "Any party wishing to challenge the award must make a motion to vacate the award in a federal or state court of appropriate jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, or applicable state statute."  *Id.* at 3.

According to RJA, Martin "did not challenge or give notice of any planned challenge to the Award, as of the time of filing" the Motion to Confirm.  ECF 1, ¶ 11. This suit followed.

## II.     Standard of Review

This case involves an arbitration award in the context of a motion for default judgment. Rule 55(b) of the Federal Rules of Civil Procedure governs default judgments. In particular, Rule 55(b)(1) provides that the clerk must enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation."  But, "[a] plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise the complaint must be supported by affidavit or documentary evidence."  *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (Grimm, M.J.).[8]

As noted, plaintiff seeks to confirm the arbitration award by way of a default judgment. The United States Court of Appeals for the Fourth Circuit has a "strong policy favoring the disposition of cases on the merits . . . ."  *Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 229

---

[8] Judge Grimm now serves as a United States District Judge.  But, he authored *Monge* when he was a United States Magistrate Judge.

(4th Cir. 2019) (discussing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)), *cert. denied*, 139 S. Ct. 2762 (2019); *see Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013). But, that policy is not absolute. Default judgment "'is appropriate when the adversary process has been halted because of an essentially unresponsive party.'" *Garnier-Thiebaut, Inc. v. Castello 1935 Inc.*, SDT-17-3632, 2019 WL 6696694, at *1 (D. Md. Dec. 6, 2019) (Thacker, J.) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013)); *see SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

When a defendant does not respond to the suit, the plaintiff's factual allegations are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (stating that the court must "determine whether the well-pleaded allegations . . . support the relief sought"). But, "'a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" *Ryan*, 253 F.3d at 780 (citation omitted). The court must assess whether the undisputed factual allegations constitute a legitimate cause of action. *Id.*; *see* 10A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2688 (4th ed., 2020 Supp.) ("[L]iability is not deemed established simply because of the default . . . the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

When, as here, a motion for default judgment is based on an application for confirmation of an arbitration award, the plaintiff "'must show that it is entitled to confirmation of the arbitration award as a matter of law.'" *Choice Hotels Int'l, Inc. v. Khan*, DKC-17-3572, 2018 WL 1046301, at *2 (D. Md. Feb. 26, 2018) (quoting *United Cmty. Bank v. Arruarana*, No. 1:10cv248, 2011 WL 2748722, at *2 (W.D.N.C. July 13, 2011)). Numerous cases in this District reflect that a motion for default judgment is the appropriate means to resolve a motion to confirm an arbitration award

for which there has been no response from the defendant. *See, e.g.*, *Choice Hotels Int'l, Inc. v. Sita Corp.*, GJH-20-189, 2021 WL 615078 (D. Md. Feb. 17, 2021); *Knightsbridge, LLC v. DKW Communications, Inc.*, PX-19-2381, 2020 WL 1638407 (D. Md. Apr. 2, 2020); *Climbzone, LLC v. Washington*, GJH-18-2732, 2020 WL 674353 (D. Md. Feb. 10, 2020); *Choice Hotels Int'l, Inc. v. Joseph Group, LLC*, PWG-18-2596, 2019 WL 3020929 (D. Md. July 10, 2019); *Choice Hotels Int'l, Inc. v. Yoon*, TDC-18-2043, 2019 WL 979153 (D. Md. Feb. 27, 2019); *Young v. Brahmbatt*, PWG-15-3290, 2017 WL 2876476 (D. Md. July 6, 2017); *Choice Hotels Int'l, Inc. v. Walia*, TDC-16-2923, 2017 WL 395102 (D. Md. Jan. 27, 2017); *Choice Hotels Int'l, Inc. v. Mander*, GJH-14-3159, 2015 WL 1880277 (D. Md. Apr. 22, 2015); *Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, DKC-11-2893, 2012 WL 5995248 (D. Md. Nov. 29, 2012).

If the court is satisfied that liability has been established, it must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. Allegations "relating to the amount of damages" are not deemed admitted based on a defendant's failure to respond to a suit. Fed R. Civ. P. 8(b)(6); *see Monge*, 751 Supp. 2d at 794; *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010). "[U]nless the amount of damages is certain," *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001), the court "must make an independent determination regarding such allegations." *Agora Fin., LLC*, 725 F. Supp. 2d at 494; *see Credit Lyonnais Secs. (USA), Inc. v. Alcantara,* 183 F.3d 151, 154 (2d Cir.1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). A hearing is not required, however, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages. *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 374 (D. Md. 2012) ("While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely

instead on 'detailed affidavits or documentary evidence to determine the appropriate sum.'")
(quoting *Adkins*, 180 F. Supp. 2d at 17); *see Monge*, 751 F. Supp. 2d at 795.

Under Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed
in amount, what is demanded in the pleadings."  "When a complaint demands a specific amount
of damages, courts have generally held that a default judgment cannot award additional damages."
*In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).  This is because the amount
sought as damages might influence the defendant in deciding whether to expend the resources to
defend the action.  *Monge*, 751 F. Supp. 2d at 796.

### III.   Discussion

### A.  Liability

As indicated, in the context of a motion to confirm an arbitration award, a plaintiff seeking
default judgment "'must show that it is entitled to confirmation of the arbitration award as a matter
of law.'"  *Khan*, 2018 WL 1046301, at *2 (quoting *United Cmty. Bank*, 2011 WL 2748722, at *2).

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9, provides:

> If the parties in their agreement have agreed that a judgment of the court shall be
> entered upon the award made pursuant to the arbitration, and shall specify the court,
> then at any time within one year after the award is made any party to the arbitration
> may apply to the court so specified for an order confirming the award, and
> thereupon the court must grant such an order unless the award is vacated, modified,
> or corrected as prescribed in sections 10 and 11 of this title. If no court is specified
> in the agreement of the parties, then such application may be made to the United
> States court in and for the district within which such award was made. Notice of
> the application shall be served upon the adverse party, and thereupon the court shall
> have jurisdiction of such party as though he had appeared generally in the
> proceeding.

*See also Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 195, 197-204 (2000)
(holding the FAA's venue provisions are permissive and that a motion to confirm an award may
also be made in any district proper under the general venue statute).

"A federal court may entertain an action brought under the FAA only if the action has an 'independent jurisdictional basis.'" *Badgerow v. Walters*, 595 U.S. ___, ___S. Ct.___, 2022 WL 959675, at *5-6 (Mar. 31, 2022) (quoting *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 575 (2008)).  Thus, as the Supreme Court recently reaffirmed, a plaintiff, like RJA, who seeks to confirm an arbitral award under Section 9 of the FAA "must identify a grant of jurisdiction apart from [Section 9] itself, conferring 'access to a federal forum.'" *Badgerow*, 2022 WL 959675, at *4 (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009)).

Here, there is complete diversity between the parties, and the amount in controversy exceeds $75,000.  *See* ECF 1, ¶¶ 13-15.  Thus, the Court has diversity jurisdiction, pursuant to 28 U.S.C. §1332(a).  *See Badgerow*, 2022 WL 959675, at *6.

Judicial review of an arbitration award is exceedingly deferential. "[T]he scope of review of an arbitrator's valuation decision is among the narrowest known at law."  *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998).  "Federal courts may vacate an arbitration award only upon a showing of one of the grounds listed in the Federal Arbitration Act, or if the arbitrator acted in manifest disregard of law."  *Id*.  When reviewing an arbitration award, "[a] court sits to 'determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it.'"  *Wachovia Securities, LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) (citations omitted).  This is in service of the FAA's "comprehensive scheme to replace judicial hostility to arbitration with a national policy favoring it."  *Wachovia Securities, LLC*, 671 F.3d at 478.

In my view, confirmation of the Award is warranted.  RJA and Martin entered into an agreement by which FINRA would arbitrate disputes such as the one at issue in this case, in accordance with the Agreement, the Note, and the Code.  *See* ECF 1-2 at 2; ECF 1-3 at 3-4; ECF

1-4 at 2.  The Agreement and the Note each provide that any arbitration award rendered against Martin could be entered as a judgment in any court of competent jurisdiction.  *See* ECF 1-2 at 2; ECF 1-3 at 4; *see also* FINRA Rule 13904(a) (providing that arbitration awards "may be entered as a judgment in any court of competent jurisdiction").

Furthermore, RJA has properly filed the Motion to Confirm under 9 U.S.C. § 9, as the Award was made in Baltimore.  *See* ECF 1, ¶ 16; ECF 1-5 at 2.  Moreover, the Motion to Confirm was filed on December 3, 2021 (ECF 1), i.e., within one year of the date the Award was made on August 20, 2021.  *Id.* ¶ 9; *see* ECF 1-5 at 5.  And, as noted, the defendant received notice of the arbitration proceeding, appeared and participated in the Initial Prehearing Conference held on June 22, 2021, and received notice of his right to challenge the award.  ECF 1, ¶¶ 8, 10; *see* ECF 1-6. Martin has also received notice of this case.  *See* ECF 6.

Nonetheless, Martin has not moved to vacate the Award or the Clerk's entry of default. And, as to the merits of the Award, "neither misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes grounds for vacating an award." *Apex Plumbing Supply*, 142 F.3d at 194. In any event, "[t]here has been no showing of the narrow grounds listed in the FAA for vacatur of the arbitration award, nor is there any suggestion that the arbitrator acted in manifest disregard of the law." *Jai Shree Navdurga, LLC*, 2012 WL 5995248, at *3.

Accordingly, RJA has demonstrated an entitlement to confirmation of the Award and the default judgment.

## B.  Damages

I turn to the issue of damages.  As mentioned, RJA asks the Court to confirm the Award, which determined that Martin was liable to RJA in the total amount of $366,021.86.  ECF 1, ¶ 9;

*see* ECF 13 at 4.  This sum is derived from three sources.  First, it includes compensatory damages in the amount of $328,618.81.  *See* ECF 1, ¶ 9; ECF 1-5 at 3.  Second, it includes prejudgment interest of $36,103.05, incurred from July 7, 2020, the date on which the Note became due, to August 12, 2021.  *See* ECF 1, ¶ 9; ECF 1-5 at 3.  And third, it includes $1,300 in costs incurred in connection with the arbitration proceeding.  *See* ECF 1, ¶ 9; ECF 1-5 at 3, 4.

RJA is entitled to a judgment for all three of these items.  The compensatory damages of $328,618.81, the prejudgment interest, and the $1,300 in costs all appear on the face of the Award, the Motion to Confirm, as well as the Motion for Default Judgment.  Further, they are well supported by plaintiff's submissions to the Court.

## IV.    Conclusion

In view of the foregoing, I shall confirm the Award of $328,618.81 in compensatory damages, as determined by the arbitrator; prejudgment interest at the rate of 10% per annum, for the period between July 7, 2020 and August 12, 2021, totaling $36,103.05, which is consistent with the interest rate specified by the Note and awarded by the arbitrator; and arbitration costs of $1,300, for a total of $366,021.86 in damages.  And, for these reasons, I shall grant default judgment in favor of plaintiff and against Martin in the total sum of $366,021.86.

An Order follows, consistent with this Memorandum.


Date:  April 13, 2022                                          _____/s/_____

                                                               Ellen Lipton Hollander
                                                               United States District Judge